Bussom v. Forsyth.

RACHEL A. BUSSOM, appellant,

v.

GEORGE T. FORSYTH and others, respondents.

On the distribution of an intestate's estate after his death in 1874,—
*Held*, that the claim of his granddaughter Rachel (daughter of his deceased daughter) to a share, could be resisted by proof of the illegitimacy of her mother, notwithstanding intestate's recognition of Rachel's mother as his daughter by an entry in his family Bible, and, also, in other ways; and notwithstanding, also, that intestate, his wife and daughter (Rachel's mother) are all dead, and that Rachel's mother's legitimacy was never questioned until after the death of her father and mother and herself, and not until the intestate's (her father's) estate was about to be distributed.

On appeal from the decree of Monmouth county orphans court.

NOTE.—Among the declarations of parents admissible to prove the birth of a child *before* their marriage, may be an answer in chancery (*Goodright* v. *Moss*, Cowp. 591 [although this case has been sometimes questioned, *Berkley Peerage Case*, 4 Camp. 420; and by *Justice Lowrie* dissenting in *Paige* v. *Dennison*, 1 Grant's Cas. 387]; also, *Wharton Peerage*, 12 Cl. & Fin. 295; *Burns* v. *Burns*, 12 Fla. 379; *Henderson* v. *Cargill*, 31 Miss. 367); but not a bill (*Stark. Evid.* (9th Am. ed.) *439; *Johnson* v. *Johnson*, 1 Cold. 626); or, recitals in deeds (*Bicking's Appeal*, 2 Brews. 202; *Rose* v. *Clark*, 8 Paige 581; *Richard* v. *Brehm*, 73 Pa. St. 140); or, recitals in wills (*Johnson* v. *Johnson*, 1 Desauss. 595; *Vulliamy* v. *Huskisson*, 3 You. & Coll. 80; *Pearson* v. *Pearson*. 36 Cal. 609; *Johnson* v. *Pembroke*, 11 East 504; *Slaney* v. *Wade*, 1 Myl. & Cr. 338; *Kenyon* v. *Ashbridge*, 35 Pa. St. 157; *Blackburn* v. *Crawfords*, 3 Wall. 175; *Viall* v. *Smith*, 6 R. 1. 417; *Richard* v. *Brehm*, 73 Pa. St. 140; *Haden* v. *Ivey*, 51 Ala. 381; although not conclusive, *Ehringhaus* v. *Cartwright*, 8 Ired. 39); or, letters addressed to the wife (*Ferrie* v. *Pub. Adm'r*, 3 Bradf. 168; *Vincent's Appeal*, 60 Pa.

Bussom v. Forsyth.

*Mr. W. H. Vredenburgh*, for appellant.

*Mr. Joel Parker*, for respondents.

THE ORDINARY.

The sole question involved in this case is as to the right of Rachel A. Bussom to a distributive share of the personal estate of her grandfather John Jones. She is the daughter and only child of Mary Burtis, deceased, who was the wife of Abner L. Burtis. Mary Burtis was the daughter of John Jones and his wife, Ann, whose maiden name was Hopkins. John Jones died October 9th, 1874. His daughter Mary was born March 30th, 1823, and died April 1st, 1851. She was the oldest child of her parents. The claim of Mrs. Bussom is resisted on the ground that her mother was of illegitimate birth. Mrs. Bussom relies for the establishment of her claim mainly upon the fact that her mother was always treated by John Jones as his lawful child; that, by

---

*St. 228*); or, parol declarations that they had never been married (*Craufurd* v. *Blackburn, 17 Md. 49; Barnum* v. *Barnum, 42 Md. 252; Wright* v. *Hicks, 15 Ga. 160; Haddock* v. *Boston & M. R. R., 3 Allen 298; Niles* v. *Sprague, 13 Iowa 198; Dannelli* v. *Dannelli, 4 Bush 51; Alexander* v. *Chamberlain, 1 N. Y. Sup. Ct. 600;* see *Scherpf* v. *Szadeczky, 4 E. D. Smith 110; Rockwell* v. *Tunnicliff, 62 Barb. 408; Boykin* v. *Boykin, 70 N. C. 262; Hamilton* v. *Hamilton, 9 Cl. & Fin. 327; Kuhl* v. *Knauer, 7 B. Mon. 130*) : as to declarations of a godfather, see *Fielder* v. *Fielder, 2 Hagg. 196.*

Whether general reputation is admissible, see *Haddock* v. *Boston & M. R. R., 3 Allen 298; Stegall* v. *Stegall, 2 Brock. 256; Davis* v. *Orme, 36 Ala. 540; Buchanan* v. *State, 55 Ala. 154; Wright* v. *Hicks, 15 Ga. 160; Myatt* v. *Myatt, 44 Ill. 473; Miller* v. *White, 80 Ill. 580; Boone* v. *Purnell, 28 Md. 607; McGoon* v. *Irvin, 1 Pinney 526; Henderson* v. *Cargill, 31 Miss. 367;* or, proof that the child resembles its putative parent, by offering the child as an *exhibit*, or otherwise, *Hubback *384; United States* v. *Collins, 1 Cranch C. C. 592; Wright* v. *Hicks, 15 Ga. 160; Morris* v. *Davis, Nicolas's Ad. Bast. 217; Risk* v. *State, 19 Ind. 152; Reitz* v. *State, 33 Ind. 187; State* v. *Bowles, 7 Jones 579; Jones* v. *Jones, 45 Md. 144; Warlick* v. *White, 76 N. C. 175.*

The lapse of time increases the presumption as to the legitimacy of offspring (*Ferrie* v. *Pub. Adm'r, 4 Bradf. 28, 23 N. Y. 90, 13 Wall. 465; Chambers* v. *Dixon, 2 Serg. & R. 475; Kelly* v. *McGuire, 15 Ark. 605; Piers* v. *Piers, 2 H. of L. Cas. 331; Stevenson* v. *Gray, 17 B. Mon. 205; Cope* v. *Pearce, 7 Gill 247; Rogers* v. *Park, 4 Humph. 480;* see *Duins* v. *Donovan, 3 Hagg. 301*); and it has been said that after the death of the parents, their marriage cannot be drawn in question to bastardize their

Bussom v. Forsyth.

the entry of her mother's birth in Jones's family Bible, he declared her to be such, for she is therein stated to have been the daughter of John Jones and Ann, his wife; that, by the entry of the marriage of Jones and his wife, in the docket of the justice of the peace by whom the marriage was solemnized, it appears that they were married March 8th, 1823, which was twenty-two days before the birth of Mrs. Bussom's mother; that, before the birth of Mrs. Bussom's mother, John Jones stated that he was married, and that the legitimacy of Mrs. Bussom's mother was not questioned until after the death of her father and mother and herself, and not until her father's estate was about to be distributed.

The appellant's counsel insists that, inasmuch as John Jones and his wife and their daughter Mary are all dead, and it is established that Jones and his wife were lawfully married, the law of *bastard eigne* and *mulier puisne* will not permit the legitimacy of Mary, their daughter, to be called

issue (*Com. Dig. Bastard (B.)*; *2 Stark. Evid.* \*221; *Harris* v. *Hicks*, *2 Salk.* 548; *Jackson* v. *Rehm*, 6 *Jones Eq.* 143; *Spears* v. *Burton*, *31 Miss.* 547; *Powell* v. *Powell*, *27 Miss.* 783); so, where the issue was also dead (*Johnson* v. *Johnson*, 1 *Desauss.* 595; *Johnson* v. *Johnson*, *30 Mo.* 72); so, a divorce to bastardize the issue, cannot be decreed after the death of one of the parties to a voidable marriage (*Wickham* v. *Enfeild*, *Cro. Car.* 352; *Elliott* v. *Gurr*, *2 Phillim.* 16; *Bonham* v. *Badgley*, *7 Ill.* 622; *Parker's Appeal*, 44 *Pa. St.* 309; *Walter's Appeal*, 70 *Pa. St.* 392; *A.* v. *B.*, *L. R.* (*1 P. & D.*) 559; *Park* v. *Barron*, 20 *Ga.* 702; *Banks* v. *Banks*, 34 *Ga.* 407; *Stevenson* v. *Gray*, 17 *B. Mon.* 193; *Tomppert* v. *Tomppert*, 13 *Bush* 326; *Harrison* v. *Harrison*, 22 *Md.* 468; *Cropsey* v. *McKinney*, 30 *Barb.* 47; *Bowers* v. *Bowers*, 10 *Rich. Eq.* 551; *Sackett* v. *Giles*, 3 *Barb. Ch.* 204; *Brocas* v. *Brocas*, 2 *Sw. & Tr.* 383; *Grant* v. *Grant*, *Id.* 522; see *Anon.*, 12 *Mod.* 419; *Hemming* v. *Price*, *Id.* 432; *Taylor* v. *Taylor*, 1 *Lee* 571; *Adkins* v. *Holmes*, 2 *Ind.* 197; *Com.* v. *Perryman*, 2 *Leigh* 717; *Griffin* v. *Banks*, 24 *How. Pr.* 213, 37 *N. Y.* 621; *Gathings* v. *Williams*, 5 *Ired.* 487; *Manchester* v. *Springfield*, 15 *Vt.* 385; *Boatman* v. *Curry*, 25 *Mo.* 433; *Ward* v. *Dulaney*, 23 *Miss.* 410; *Baugh* v. *Baugh*, 37 *Mich.* 59; *Sloan* v. *Kane*, 10 *How. Pr.* 66; *Beavan* v. *McMahon*, 2 *Sw. & Tr.* 58).

Unless made evidence by statute, the mere certificate of a minister as to a marriage ceremony performed by him, is inadmissible (*1 Bish. Mar. & Div.* §§ 472, 473; *Cains* v. *Relf*, 12 *How.* 472; *Ellis* v. *Ellis*, 11 *Mass.* 92; *Com.* v. *Littlejohn.* 15 *Mass.* 163; see *Taylor* v. *State*, 52 *Miss.* 84; *Blackburn* v. *Crawfords*, 3 *Wall.* 175; *Arms* v. *Middleton*, 23 *Barb.* 571; *Stockbridge* v. *Quick*, 3 *Car. & K.* 305; *Tandy* v. *Masterson*, 1 *Bibb* 330; *De Amarelli's Estate*, 2 *Brews.* 239; *Allen* v. *Hall*, 2 *Nott & McC.* 115).

Bussom *v.* Forsyth.

·in question.   By that law, if the bastard entered into posses-
sion of the lands of his father after the death of the latter,.
and kept possession until his own death, and they descended
to his issue, all other heirs of his father were barred.   The·
reason was that, in the case of a person thus peculiarly cir-
cumstanced, the law would not unravel the matter and suffer·
his estate to be shaken after the land had descended to his.
issue.   *2 Bla. Comm. 248.*   But, by the common law,.
legitimation of the birth of a bastard by the subsequent
·marriage of his parents was confined to that case.   *Pride* v.
*Earl of Bath, 1 Salk. 120 ; Hubback on Succession 367.*

In the case just cited, which was an action of ejectment,.
the proof was that the parents of the person whose legiti-
macy was in question, were both dead, and he was dead also.
His parents were married after his birth, and lived together·
as husband and wife for ten years and until their death.
He was recognized by his father as his son and heir, and, as·
such, sat in parliament and was recognized in a royal patent

A certified copy of a marriage record, when required to be kept by stat-·
ute, is plenary evidence of such marriage (*1 Bish. on Mar. & Div. §§·
463, 469 ; Egremont* v. *Gronzebrook, 4 Ad. & El. (N. S.) 406 ; Cooke* v.
*Lloyd, Peake's Evid. App.* xxi ; *Wollaston* v. *Barnes, 1 M. & Rob. 386 ;·
Verholf* v. *Van Homvenlengen, 21 Iowa 429 ; Prevost's Case, 4 La. An. 347 ;·
Northfield* v. *Plymouth, 20 Vt. 582 ; State* v. *Hasty, 42 Me. 287 ; ·Blackburn*
v. *Crawfords, 3 Wall. 175 ; Kan. Pac. R. R.* v. *Miller, 2 Colorado 442 ;
Beggs* v. *State, 55 Ala. 108 ; Jones* v. *Jones, 18 Me. 308 ; Childress* v. *Cut-
ter, 16 Mo. 25*).   But the evidence of such certificate is not of a higher
order than that of the witnesses to the ceremony (*1 Bish. Mar. & Div.
§ 463 ; Logan* v. *Gray, Tappan 69 ; Viall* v. *Smith, 6 R. I. 419 ; Nixon* v.
*Brown, 4 Blackf. 157 ; Mills* v. *United States, 1 Pin. 73 ; State* v. *Marvin, 35·
·N. H. 22 ;* but see *Broussard* v. *Mallet, 8 La. (N. S.) 269*) ; nor is a
Bible entry superior to a witness's recollection (*Berry* v. *Waring, 2 Harr.
& Gill 103 ; Taylor* v. *Hawkins, 1 McCord 163 ; Clements* v. *Hunt, 1 Jones
400 ; Sharp* v. *Johnson, 22 Ark. 79*).   A foreign certificate or certified
copy of a registry must be accompanied with proof of the statute of
the country, showing that such registry is required to be kept &c. (*1·
Bish. Mar. & Div. §§ 475-478 ; Milford* v. *Worcester, 7 Mass. 57 ; Smith* v.
·*Smith, 1 Tex. 621 ; Niles* v. *Sprague, 13 ·Iowa 198 ; State* v. *Dooris. 40 Conn.
145 ; Stark. Evid. (9th Am. ed.) *302 ; Com.* v. *Morris, 1 Cush. 391 ; Stang-
lein* v. *State, 17 Ohio St. 453 ; Bird* v. *Com., 21 Gratt. 800 ; State* v. *Horn,.
43 Vt. 20 ; Morrissey* v. *Wiggins Ferry ·Co., 47 Mo. 521 ; Hutchins* v. *Kim-
·mell, 31 Mich. 126 ; Leader* v. *Barry, 1 Esp. 353 ; Rooker* v. *Rooker, 3 Sw.·
·& Tr. 526*).

Bussom *v.* Forsyth.

and in an act of parliament. See the report of the case in *3 Levinz 410.* It was urged that the law would not permit his legitimacy to be called in question, under such circumstances, by proof that the marriage between his parents was void. But the objection was overruled and the evidence admitted.

In the case in hand, the proof is clear that Mary, the daughter of John Jones and his wife, Ann, was born before her parents were married. They were married, as appears by the record of the marriage in the clerk's office, and the certificate of the justice there filed, on the 8th of June, 1823, more than two months after Mary was born. Charles Hopkins, the brother of Ann, swears that Mary was born about two months before her parents were married. He was in the house when she was born, and he witnessed the marriage. There is other evidence to the same effect, notably the testimony of Mrs. Quicksell, who was the cousin of Mary Jones. It is certain that the memory of Charles Hopkins

---

The presumption of marriage arising from cohabitation, reputation &c., is destroyed by evidence that no marriage, in fact, ever was solemnized (*Port* v. *Port,* 70 *Ill.* 484; 1 *Bish. Mar. & Div.* § 440; *Weatherford* v. *Weatherford,* 20 *Ala.* 548; *Clayton* v. *Wardell,* 5 *Barb.* 214, 4 *N. Y.* 230; *Archer* v. *Haithcock,* 6 *Jones* 421; *People* v. *Brown,* 34 *Mich.* 339; *Reg.* v. *Millis,* 10 *Cl. & Fin.* 534; *Shafher* v. *State,* 20 *Ohio* 1; *Gaines* v. *New Orleans,* 6 *Wall.* 642; *Reg.* v. *Allen,* L. R. (1 C. C.) 367; *Jones* v. *Jones,* 28 *Ark.* 19; *Myatt* v. *Myatt,* 44 *Ill.* 473; *Nossaman* v. *Nossaman,* 4 *Ind.* 648; *Durand* v. *Durand,* 2 *Sweeney* 315).

In *Wilkinson* v. *Payne,* 4 *T. R.* 468, an infant was married when he had neither parents nor guardian to consent to the ceremony. When he became of age his wife was upon her death-bed, and died three weeks afterward, but on proof that the wife's father and family had always recognized them as husband and wife, it was left to the jury to presume a legal marriage after the husband was of age, and they did so; see *Smith* v. *Huson,* 1 *Phillim.* 286.

In *Fenton* v. *Reed,* 4 *Johns.* 52, the plaintiff was married to Reed in 1792, under the supposition that her former husband, who was absent, was dead. He returned, however, and lived until June, 1800, but plaintiff continued cohabiting with Reed as her husband until his death in 1806, and although no marriage ceremony was proved to have taken place between her and Reed after the death of her first husband, yet the court below was held to have been authorized to presume a marriage subsequent to that time. Also, *Jackson* v. *Claw,* 18 *Johns.* 346; *Rose* v. *Clark,* 8 *Paige* 574; *Rex* v. *Twining,* 2 *B. & Ald.* 387; *Blanchard* v. *Lambert,* 43 *Iowa* 228; *Carroll* v. *Carroll,* 20 *Tex.* 731; 1 *Bish. Mar. &*

Bussom *v.* Forsyth.

may be relied upon in this matter. He could not forget the
unhappy incident in his family history, with its distress and
shame. It required no effort of memory to retain the recol-
lection of it. Nor is the direct and positive testimony on
the subject of the date of the marriage, overcome by the
entry of the marriage in the justice's docket, in which the
date of the marriage has been altered. The docket comes
from the possession of the appellant. Her husband obtained
it from the grandson of the justice. It is proved that the
date of the marriage therein was in accordance with the
justice's certificate sent by him to the clerk's office, accord-
ing to law, in July, 1823—that is, it was June 8th, 1823.

Mr. Horner swears that he saw the docket at the appel-
lant's house, December 9th, 1874; that he asked Mrs.
Bussom, the appellant, when John Jones and his wife,
Ann, were married, and she said she thought it was June
4th; that he asked her for the docket, and she went and
got it, and said the date was June 8th, 1823, and he says

Div. § 508; Senser v. Bower, 1 Pen. & Watts 450; Donnelly v. Donnelly, 8
B. Mon. 113; Woods v. Woods, 2 Bay 476; Hull v. Rawls, 27 Miss. 471;
Caujolle v. Ferrie, 23 N. Y. 90, 13 Wall. 465; Johnson v. Johnson, 1 Cold.
626; Spears v. Burton, 31 Miss. 547; Wilkie v. Collins, 48 Miss. 496; Can-
ady v. George, 6 Rich. Eq. 103; Navarro's Case, 24 La. An. 298; but see
Cram v. Burnham, 5 Me. 213; Duncan v. Duncan, 10 Ohio St. 181; Brower
v. Bowers, 1 Abb. App. Dec. 214.

In Starr v. Peck, 1 Hill 270, both parents, Samuel and Sarah, were
dead, and on the question of the legitimacy of their first-born child,
Abby, it appeared that she was born ten days before the marriage cer-
emony. Samuel had visited Sarah in the way of courtship for about
a year previous to the marriage. He followed the sea, and was at
sea when Abby was born. Sarah had announced their engagement
before he went to sea. They were married shortly after his return,
he having been unexpectedly detained. Abby lived with them until
her marriage, and was always treated by them as their legitimate
child.—Held, that a judge's charge, leaving to the jury the question
whether there had not been a marriage in fact before the ceremony,
and before Samuel's last voyage, was correct. See Cheney v. Arnold, 15
N. Y. 345; Cheseldine v. Brewer, 1 Harr. & McH. 152; Beverson's Case, 47
Cal. 621.

In Viall v. Smith, 6 R. I. 417, both parents were dead, and also their
daughter Louisa, whose illegitimacy was asserted, and whose share of
her father's estate her children claimed by descent. The town clerk
had entered on the registry: "Ebenezer Smith and Martha Townsend
were married Sept. 4, A. D. 1800, by Rev. Samuel Watson. Louisa,

Bussom v. Forsyth.

that he looked at the docket and saw that that was the date.
He says that the date now appears to have been altered.   It
is evident, from inspection of the entry, that it has been
altered.   One of the experts in handwriting, produced by
and sworn for the appellant, swears that, in his opinion, the
word June has been written over the word March.   Why
the justice should have made such an alteration, does not
appear, and the theory that the alteration was made by him
rests on no reasonable hypothesis.   When, in July, 1823,
he filed his certificate of this and two other marriages, he
stated that the marriage in question was solemnized June
8th, 1823, and that date is in accordance with the other evi-
dence as to the time when the marriage took place.   The
docket was produced by the appellant from her own custody,
and, according to the testimony of her husband, she and he
had had it in their possession from about November, 1874.
The alteration has been made in part by erasure with a
knife or other like instrument; in part, apparently, by alter-

their daughter, was born Saturday, Aug. 23, 1800."—*Held*, that since
the registry appeared to have been made from the town clerk's own
knowledge, or on information, and not in pursuance of the statute,
it was not conclusive as to Louisa's birth ; nor were her father's decla-
rations " that unless he made a will, Louisa could get nothing by law,"
conclusive ; and her legitimacy was nevertheless sustained, by proof
that Louisa was brought up in her father's family, and always spoken
of by him and the other members of his family as his daughter.   See
*Hernnan* v. *Mason, 37 Wis. 273.*

In *Blackburn* v. *Crawfords, 3 Wall. 175*, the statutes of Maryland con-
tained no provision requiring a registry of baptisms to be kept.   A
priest, after baptizing a child, made the following entry on the church
registry : ."1837, July 30, George Thomas, son of Thomas B. Crawford
and Elizabeth Taylor, *his wife*, born 7th of September, 1836."   "*Spon-
sors*, John and Sarah Evans."—*Held*, admissible to prove the fact of the
baptism, but not that Elizabeth Taylor was Crawford's wife at that time.

In *Piers* v. *Piers, 2 H. of L. Cas. 331, 363*, a woman was, shortly
before her confinement, married to the father of her child, the cer-
emony being performed in a private house, for which marriage no
license could afterwards be found.   After the birth of her child, the
parents were legally married.—*Held*, not to bastardize such child.

In *Raby* v. *Batiste, 27 Miss. 731*, A. claimed to be the heir and son of
A. K., but it was shown that A. was a mulatto, his father being a
negro, and his mother having married A. K. after his birth, and that
A. never claimed any rights as a white man.—*Held*, that the subsequent

Bussom *v.* Forsyth.

ing and adding to the word June so as to change it to March, and in part by obliteration from rubbing, apparently with the finger. The entry bears the evidence of fraudulent alteration. Coming as it does from the custody of the appellant, and offered as it is by her as evidence in her behalf, without any explanation of the alteration, or evidence as to the condition of the entry when the docket was taken into her possession, the alteration, manifestly fraudulent, deprives it, under the circumstances, of all claim to consideration.

That the alteration is fraudulent, appears from the testimony of Jesse Gulick, who was a constable in 1823. He was sworn into office on the 12th of March, 1823, and served but a single year. He swears that the first business he did was to serve a warrant, from the justice of the peace by whom the marriage was solemnized, on John Jones, in proceedings in bastardy, instituted against him on the oath of Ann Hopkins, charging him with being the father of her child. He took the warrant and went to see Jones about it, he says, a few days, and not more than ten, after he was

marriage of his mother to A. K., and their recognition of him as their son, did not render him A. K.'s heir.

In *United States* v. *Skam, 5 Cranch C. C. 367,* an instruction to a jury that "if they believed that O. T. married the mother of Mary Ann twelve months after her birth, and maintained and recognized her in every way as his own child, it was evidence from which they might infer that O. T. was her father, and so within the Maryland statute"— was held correct. Also, *Jones* v. *Jones, 45 Md. 144.*

In *Cooke* v. *Lloyd, Peake's Evid. App.* xxi, the plaintiff, Joseph, a second son, proved that several witnesses declared his parents were not married until 1759; that his father called his children born before 1759, bastards; that on his death-bed he pointed to plaintiff and said he was his heir; that the registry showed the parents' marriage in 1759, previous to which defendant's ancestor, Philip, had been born; that the mother testified that although she went to London for the purpose of being married in 1747, yet she never was actually married until 1759; that Philip, who was dead, had himself declared that he was a bastard. The defendant proved that banns for the parents were published in 1747, and that the banns being forbidden by the father's mother, they went to London for the purpose (as they said) of being married in the Fleet, and, on their return, announced that they had been married; that they lived together as husband and wife, and were visited as such, even by the father's mother; that in a litigation they

sworn in.   It is obvious that Jones and Ann Hopkins were not married prior to the 12th of March.

The appellant's counsel insists that it appears by the testimony of Caleb Buckelew, that Jones said, in the latter part of March, 1823, that he was married.   But the proof is clear that he was not married at that time.   The witness is probably mistaken as to the time, if, indeed, he is in fact able to recall at all what was said on an occasion in which he had no interest, nearly sixty years ago.

The entry in the family Bible is of no value as an admission or declaration, in view of the proof that, though Mary was the daughter of Jones and his wife, she was illegitimate.   In *Pride* v. *Earl of Bath, 1 Salk. 120,* there was evidence of recognition of the son, by the father, as his son and heir, in his will and settlement.   It is noteworthy that there is no entry in the Bible of the marriage of Jones and his wife.   I am satisfied that the appellant's mother was of illegitimate birth.

The decree of the orphans court will be affirmed, with costs.

---

both made affidavit that they had been married in 1747, by one Dare, and that the subsequent marriage in 1759 was only precautionary ; he offered the Fleet books in evidence, wherein this marriage was entered as of May 28, 1747, but the books were excluded by the judge, as was also the evidence of a witness, who said that he had examined the books in 1761, then in the possession of a man claiming to be Dare's clerk.   The jury found for the defendant.   See *Patrickson* v. *Patrickson, L. R. (1 P. & D.) 86 ; Lyle* v. *Elwood, L. R. (19 Eq.) 98 ; Pina* v. *Peck, 31 Cal. 359 ; Com.* v. *Littlejohn, 15 Mass. 163.*

In *Berkeley Peerage Case, 4 Camp. 401,* an entry in a family Bible by a father that N. was his eldest son, born in lawful wedlock from J., his wife, on the 1st day of May, 1778, signed by the father, together with proof of such father's declarations that he made such entry for the express purpose of establishing the legitimacy and the time of the birth of his eldest son N., in case the same should ever be called in question after his death—was held admissible to prove N.'s legitimacy, but the circumstances excited suspicion on account of their particularity.

If the marriage of the parents after the birth of their child legitimates such child at their domicile, it will be recognized as legitimate everywhere.   *Story Confl. of Laws ? 93 ; Wharton Confl. of Laws ? 240 ; Smith* v. *Kelly, 23 Miss. 167.*—Rep.