NOSSAMAN and Others *v.* NOSSAMAN.

A marriage may be presumed from cohabitation and reputation; but the presumption, like other presumptions of fact, may be rebutted.

Where a cohabitation is shown to have been known by the parties to be adulterous in its origin, a lawful wife being then alive, no presumption of the death of, or a divorce from, such wife will be indulged in favor of the guilty parties.

Affirmative evidence is necessary in such a case to establish the death of, or a divorce from, the lawful wife.

It will not be presumed, in order to establish a presumptive marriage, that either the parties or officers violated the law.

The clerk of one county could not, under the R. S. 1843, issue a license for the marriage of a female who was a resident of another county.

A release of real estate is not valid unless a grantee is in some way designated.

ERROR to the *Marion* Court of Common Pleas.

ROACHE, J.—This was a bill in chancery for partition by *Wellington Nossaman* and others against *Adam Nossaman.*

A portion of the complainants claim that they are entitled to the partition, as the only legitimate children and heirs of *John Nossaman,* deceased, who died intestate, to

the exclusion of the defendant, *Adam Nossaman*, whom they charge to have been illegitimate. But if they shall be found not to be the legitimate children of the intestate, it is alleged that *Sidney Belcher*, another of the complainants, who is a sister of the defendant, is entitled as the next of kin, on the ground that, admitting *Adam* be the only legitimate child, he is estopped from setting up any claim, by the following instrument of writing :

" *Indiana, Marion* County, *Oct.* 4, 1842.—I, *Adam Nossaman*, do hereby acknowledge to have received the distributive share of my father's estate, *John Nossaman*, and hereby release all my claim to his real and personal estate which he now has, or hereafter may have. Witness my hand and seal this day and year first above written. *Adam Nossaman*, (seal.) Witness, *Nathaniel M. Grew, Lewis C. Lewis.*" The writing was acknowledged before *Lewis C. Lewis*, as recorder, and recorded *October* 4, 1842.

*Adam Nossaman* answered, denying that any of the complainants were entitled as children or heirs at law of the intestate, and denying that the complainants, who claimed as the children of the intestate, were legitimate, and asserting that the writing purporting to be a release was a nullity. He also filed a cross-bill alleging himself to be the only legitimate child of the decedent, and, as such, entitled to the whole estate.

The Court below dismissed the complainants' bill.

The material facts, as we collect them from the bill, answers, and depositions, are as follows :

In 1809, *John Nossaman* was lawfully married to *Abigail Wylie*, in *Monroe* county, *Virginia*. They lived together for some years there, and had issue one son, the defendant, *Adam Nossaman*. A few years after his birth, they separated, and never afterwards lived together.

About 1815, *John Nossaman*, and *Rica Medows*, who is the mother of the *Nossamans* complainants, commenced living together in adultery, in *Monroe* county, and so continued to live there till 1820, when they removed to the west; lived some time in another part of *Virginia*, afterwards in *Kentucky*, and in 1831 or 1832 removed to *Ma-*

rion county, *Indiana*, where they continued to live during the remainder of their lives.

*John Nossaman* died in *July*, 1849, *Rica* in *July*, 1848. *Abigail Nossaman* resided in *Monroe* county, *Virginia*, until her death, the date of which is not precisely established, but was not probably earlier than *August*, 1847.

It was proved that the decedent and *Rica*, up to the time of their leaving *Virginia*, were regarded as living in adultery. After their removal to *Indiana*, they were reputed among the neighbors to be husband and wife.

Contradictory statements appear to have been made by the decedent relative to his marriage with the said *Rica*. He uniformly spoke of *Abigail* as having been his lawful wife. To some witnesses he admitted he had never been married to *Rica*. To others, he spoke of having been married to her in *Kentucky*.

*Robert B. Duncan* testified that he had been clerk of the *Marion* Circuit Court from 1834 to 1850, and had known the decedent since his removal to *Marion* county, and had no recollection of issuing a marriage license to him to marry said *Rica*; that during said period he kept a marriage record, according to law. It was proved by the deputy clerk that he had made diligent search in the office, from the year 1831, inclusive, and that no entry of such marriage appeared on the marriage record.

The complainants contend that the long cohabitation of their father and mother, and the fact that they were reputed in *Marion* county, where they resided the latter years of their lives, to be husband and wife, raises a presumption of a marriage having taken place, and that consequently their children are to be presumed legitimate.

It is true that cohabitation and reputation furnish sufficient ground for presuming a marriage in fact to have taken place; but, like all other presumptions of fact, it is liable to be rebutted. It is very clear that the presumption could not arise during the lifetime of the lawful wife, because both the decedent and *Rica* knew their cohabitation to be adulterous in its inception, and knew they could not be lawfully married until the impediment of the

subsisting marriage was removed. In such case no presumption, either of death or divorce, can be indulged in favor of the guilty parties. *Crane* v. *Crane*, 5 Greenl. 213. If a marriage in fact had taken place, in such case it would be necessary to be shown affirmatively that it had been preceded by the death or divorce of the lawful wife.

In the present case no divorce is shown. It appears that *Abigail*, the lawful wife, died in 1848, about one year prior to the death of *Rica*. This is the only period during which a lawful marriage could have taken place. In the the absence of proof to the contrary, the presumption might be indulged that the parties had been lawfully married during that year. But, as we think, all the presumptions of an actual marriage arising as to that period are rebutted by the testimony of the clerk and his deputy. It is not to be presumed, in order to establish a presumptive marriage, that either the parties or the officers violated the law. It is shown that during all the period in question, the said *Rica* was a resident of *Marion* county. It was not lawful for the clerk of any other county to issue a license for her marriage. R. S. 1843, p. 595, sec. 9. It was also the duty of the clerk to keep a record of the marriage. It is affirmatively shown that no such record is found in the office of the clerk of *Marion* county.

But it is insisted that if the complainants, *Nossamans*, are not the legitimate children of the intestate, *Sidney Belcher*, his sister, is the lawful heir, for the reason that *Adam Nossaman* is estopped by his release from setting up any claim.

We do not examine the question as to what would be the legal operation of a valid release to the father by a son of his " claim to the estate " of his father, for the reason that we consider the instrument claimed to be a release void for uncertainty. Parties are as necessary to a release, as to any other contract relating to the transfer of the title to real estate.

No title is conveyed, unless the grantee is in some way designated. *Jackson* v. *Cory*, 8 Johns. R. 385.—*Garnett* v. *Garnett*, 7 Mon. 345.—2 Hil. Real Prop. 334. The instru-

Nov. Term,
1853.

ment being void, is totally inoperative for any purpose, and cannot be set up by way of estoppel.

*Per Curiam.*—The decree is affirmed with costs.

*O. H. Smith* and *S. Yandes*, for the plaintiffs.

*J. Morrison* and *S. Major*, for the defendant.