SWEIGART *v*. STATE OF INDIANA.

[No. 26,949. Filed January 11, 1938.]

158

*George E. Hershman* and *Samuel F. Sirois*, for appellant.

*Fred A. Egan*, Prosecuting Attorney, *John N. Stanton* and *Ben Schwartz*, Deputy Prosecuting Attorneys, for the State.

HUGHES, J.—This was an action by the State of Indiana against the appellant, George W. Sweigart, clerk of the Lake Circuit Court, to recover a penalty for the unlawful issuance of a marriage license, brought under §44-204 Burns 1933, §5635 Baldwin's 1934, and for a temporary and final injunction. The complaint alleged, in substance, that George W. Sweigart was the clerk of the Lake Circuit Court and as. such clerk on the 14th day of October, 1937, issued and delivered to Henry Joseph Fortman and Louise Rains a license to marry; that at said time said Louise Rains was a female person who was not a resident of Lake County, Indiana, but was a resident of Cook County, Illinois, and so known to be by said Sweigart; that the issuance of said license was unlawful and contrary to the provisions of the statutes of the State of Indiana; that he had been clerk of said court for more than six years and during said time had issued several thousand marriage licenses contrary to the statutes of the State of Indiana.

The complaint further alleged that on the 13th day of October, 1937, Fred A. Egan, prosecuting attorney of Lake County, notified the said Sweigart in writing that the attorney-general of Indiana had ruled that the issuance of a marriage license to female applicants who

were not residents of Lake County, Indiana, was unlawful and that such practice subjected him to a statutory penalty; that upon receipt of such notice he publicly announced that he intended to disregard the notice of the prosecuting attorney and the ruling of the attorney-general and that he would continue in the future, as he had in the past, to issue licenses to applicants despite the fact that the female applicants might be non-residents of Lake County, Indiana; that since the 13th day of October, 1937, he has issued a large number of licenses in violation of the law of Indiana; that each separate license issued constitutes a separate violation of the law and because of the large number of licenses that will be issued if separate actions were brought to recover the penalty in each case there would be a multiplicity of actions which would seriously impede the business of the court and therefore an injunction should be issued against the said Sweigart enjoining him from continuing the practice of issuing licenses to females who are non-residents of the county.

The prayer of the complaint asked that the cause be submitted for trial by jury, and that the State recover a penalty as provided by statute and that a final and permanent injunction be issued against the defendant Sweigart enjoining him from issuing licenses to female applicants who are non-residents of Lake County, Indiana. The court granted a temporary injunction against the appellant enjoining him from issuing marriage licenses to females who were non-residents of Lake County, Indiana.

The appellant assigns fourteen errors for reversal.

The first, second, and third assignments of error are considered together by appellant as presenting the same question, when only the ground of demurrer, to wit, that several causes of actions have been improperly joined is considered. All other assignments of error are

considered by the appellant as applicable to the proposition that the complaint did not state facts sufficient to state a cause of action.

We are especially confronted with two provisions of the statutes of Indiana relating to the marriage license regulations. The first being §44-201 Burns 1933 (§5622 Baldwin's 1934), and the second being §44-204 Burns 1933 (§5635 Baldwin's 1934). Both of these sections are part of the Act of 1852. 1 R. S. 1852, ch. 67, §9, p. 361. Section 44-201 (§5622 Baldwin's 1934) provides:

> "Before any persons, except members of the Society of Friends, shall be joined in marriage, they shall produce a license from the clerk of the circuit court of the county in which the female resides, directed to any person empowered by law to solemnize marriages, and authorizing him to join together the persons therein named as husband and wife."

Section 44-204 Burns 1933 (§5635 Baldwin's 1934) provides:

> "Every clerk of the circuit court who shall issue any license contrary to the provisions of this act shall forfeit and pay to the state of Indiana, for the use of common schools, any sum that in the discretion of a jury shall seem right, to be recovered in an action of debt, in the name of the state; and it is made the duty of the prosecuting attorneys, within their respective circuits, to prosecute all such suits, for which they shall receive a docket fee of twenty dollars ($20.00), to be taxed with costs of suit."

It is the contention of appellant that the ruling of the court as presented in assigned errors 1, 2, and 3 deprived him of his right to a trial by jury. We can not assent to this contention. Section 2-1204 Burns 1933, §186 Baldwin's 1934, provides:

> "Issues of law and issues of facts in causes that prior to the eighteenth day of June, 1852, were of exclusive equitable jurisdiction shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable. In case of

the joinder of causes of action or defenses which, prior to said date, were of exclusive equitable jurisdiction with causes of action or defenses which, prior to said date, were designated as actions at law and triable by jury—the former shall be triable by the court, and the latter by a jury, unless waived; the trial of both may be at the same time or at different times, as the court may direct: Provided, That in all cases triable by the court as above directed, the court, in its discretion, for its information, may cause any question of fact to be tried by a jury, or the court may refer any such cause to a master commissioner for hearing and report."

*Rich* v. *Fry* (1925), 196 Ind. 303, 146 N. E. 393; *Hartlep* v. *Murphy* (1926), 197 Ind. 222, 150 N. E. 312.

Section 2-1009 Burns 1933, §113 Baldwin's 1934, also provides:

"No judgment shall ever be reversed for any error committed in sustaining or overruling a demurrer for misjoinder of causes of action."

It has often been held by this court that said section prohibits a review of a judgment expressly overruling a demurrer for misjoinder of causes of action. *Kahle* v. *Crown Oil Company* (1913), 180 Ind. 131, 100 N. E. 681. It has also often been held by this court that legal and equitable causes may be joined in the same complaint and that the overruling of a motion to separate the complaint into paragraphs is not cause for reversing the judgment even though sufficient reasons exist for asking such separation. *Rich* v. *Fry, supra.*

The equitable relief prayed for in the complaint was separate and apart from the legal relief sought and was properly an issue for the court to try. A temporary injunction was granted and that part of the complaint which asked for the recovery of damages, the legal issue, was left for further consideration and, of course, is triable by a jury if demanded. The fact that a temporary injunction was granted after the trial did not

and does not deprive the appellant of his right to a trial by jury on the legal issues involved. The fact that the plaintiff joins legal and equitable causes of action in a complaint does not deprive a defendant of the right to a trial by jury on the purely legal issues.

The question is raised as to the power of a court to enjoin a public officer from performing an official act. If the act is required by law to be performed and the performance of the act by the officer is not in excess of the authority, it is generally held that a court of equity has no power to restrain the officer. If, however, the officer is acting in breach of trust, or unlawfully or without authority or threatening to do so or if it will require a multiplicity of suits at law to obtain redress, he may be enjoined. 32 C. J. 240.

In the case of *State of N. Dakota ex rel. Ladd* v. *District Court for Cass County et al.* (1908), 17 N. D. 285, 115 N. W. 675, 15 L. R. A. (N. S.) 33, the question of the legality of the acts of the pure food commission and whether the powers conferred upon him by law under which he was authorized to act might be tested in an action to enjoin him from the commission of acts alleged to be without authority was considered. After reviewing many decisions of State and Federal courts, the court said (p. 295) :

"These cases established the principle that a court of chancery has undoubted jurisdiction to interfere by injunction in a case where public officials are proceeding illegally and improperly under a claim of right, or where the exercise of such jurisdiction is necessary to prevent a multiplicity of suits, or irreparable injury to property."

The next question presented for consideration is— Does the complaint state facts sufficient to constitute a cause of action? In other words are the acts charged against appellant in the complaint of appellee unlawful? It seems to us that the man-

date contained in §44-201 Burns 1933 (§5622 Baldwin's 1934), *supra,* is clear and plain. It says:

". . . they shall produce a license from the clerk of the circuit court of the county in which the female resides . . ." Section 44-204 Burns 1933 (§5635 Baldwin's 1934), *supra,* provides a penalty against every clerk of the circuit court of the state for issuing any license contrary to the provision of §44-201 Burns 1933 (§5622 Baldwin's 1934), *supra.*

The Act to regulate marriages passed in 1831 provided that before marriage the parties should procure a license from "the clerk of the circuit court of the county where one or both of them shall reside." And it further provided a penalty if the clerk granted a license if one of the parties was not a resident of the county. Sections 3 and 5. Acts 1831. The legislature of 1838 passed an Act to regulate marriage and in section 5 thereof it provided:

"No clerk shall grant a marriage license to any person except in the county where the female resides, and has resided for the space of one month immediately preceding such application for license, which residence shall be proven by the affidavit of a disinterested witness resident of the proper county. . . ."

We thus see that this Act provides that the license must be obtained and issued in the county where the female resides. And in the Revised Statutes of 1843, Ch. 35, §8, p. 595, we find that:

"Before any person shall be joined in marriage, by anyone authorized to solemnize marriage, . . ., they shall produce a license from the clerk of the circuit court of the county in which the female resides . . ."

Section 12 thereof required that the clerk of the court should be fully satisfied that the female resided in the county and if not he should then obtain an affidavit of a

credible witness to this fact. Section 4 of the Revised Statutes of 1852 and which is now in effect, provides, as heretofore set out, that a license must be obtained from the clerk of the county where the female resides.

It seems to us that the history of the legislation upon the subject of the regulation of marriage clearly shows that it was the purpose and the public policy of the legislature to require that the female applicant for a marriage license be a resident of the county where the license is issued. There can be no doubt that the legislature may prescribe who may marry; the age at which they may marry; the procedure and form essential to constitute marriage; the duties and obligations created by marriage; the effect on the property rights of the parties and the causes which shall be regarded as sufficient for its dissolution. This is so because the relations, duties, obligations, and consequences flowing from the marriage contract are so important to the peace and welfare of society. *Wiley* v. *Wiley* (1920), 75 Ind. App. 456, 123 N. E. 252, 18 R. C. L. 386.

The marriage relation is more than a personal relation between a man and woman. It is a status founded on contract and established by law. It constitutes an institution involving the highest interest of society and is regulated and controlled by law based upon principles of public policy affecting the welfare of the people of the state. *Fearon* v. *Treanor* (1936), 272 N. Y. 268, 5 N. E. (2d) 815.

Nor can there be any doubt that the Legislature has full power to prescribe reasonable regulations relating to marriage and to provide punishment for those who solemnize or contract marriage contrary to statutory command. *State* v. *Walker* (1887), 36 Kans. 297, 13 P. 279, 59 Am. R. 556. The regulation of marriage and divorce has been fully recognized as a matter within the exclusive province of the legislatures of the states.

*Maynard* v. *Hill* (1888), 125 U. S. 190, 8 S. Ct. 723; *Andrews* v. *Andrews* (1903), 188 U. S. 14, 23 S. Ct. 237; *Haddock* v. *Haddock* (1906), 201 U. S. 652, 26 S. Ct. 525; *Barrington* v. *Barrington* (1921), 206 Ala. 192, 89 So. 512, 17 A. L. R. 789.

The appellant contends that §44-201, *supra,* does not by its terms prohibit the clerk from issuing licenses to non-residents of Indiana. We can not agree to this contention. It seems to us that the language of the section is clear and unambiguous. It says:

". . . they shall procure a license from the clerk of the county where the female resides . . ."

This language certainly includes all female applicants for a marriage license. If it is the public policy that licenses can only be issued to female residents of the state in the county in which they live, why is it not just as important on grounds of public policy that a license shall not issue to a non-resident female? We think that it is, and the very fact that thousands of couples, during the last few months, have been rushing to Lake County, Indiana, from Cook County, Illinois, and other states to avoid the marriage regulations of the laws of Illinois and other states shows conclusively the wisdom of the Indiana law. A clear provision of the law of Indiana should not be so construed as to assist persons to escape the provisions of the laws of sister states.

As heretofore said, marriage and dissolution thereof are so important to the peace and welfare of society as to be subject to legislative control. The legislature has seen fit to provide that a divorce will not be granted to a person who has not been a bona fide resident of the state for one year and of the county for six months immediately preceding the filing of the petition for divorce. This command of the legislature is no more important to the peace and welfare of society than is the command that the female who applies for a marriage license shall be a resident of the county where the

license is issued. Under the clear language of the statute a non-resident can not come to Indiana and secure a divorce and we think it is equally clear from the language of the statute that a non-resident female can not secure a marriage license.

The case of *Nossaman* v. *Nossaman* (1853), 4 Ind. 648, has been cited by the appellee. The appellant contends that it is not in point. This case was decided in 1853 and the Revised Statutes of 1843 were then in force. Section 8, Chapter 35 provided:

". . . they shall produce a license from the clerk of the circuit court of the county in which the female resides . . ."

The Nossaman case was a proceeding in partition and the question of the legitimacy of certain children was in issue. The question arose over the marriage status of John Nossaman and Rica Medanes. The court said (p. 651) :

"It is not to be presumed, in order to establish a presumptive marriage, that either the parties or the officers violated the law. It is shown that during all the period in question, the said *Rica* was a resident of *Marion* County. It was not lawful for the clerk of any other county to issue a license for her marriage."

It is thus shown that the court considered that it was necessary to produce a license from the county in which the female resides.

In passing the Act in question evidently one of the main purposes was to prevent hasty and secret marriages. If the law which requires that the license shall be issued in the county where the female resides is enforced it is quite sure that we would not have in this state, in certain counties, the marriage mills that now exist and many hasty and secret marriages would not be consummated. It can not be doubted that such marriages are often entered into ill-advisedly and to the great harm of the marriage relation which

the state has an interest in upholding. So the public policy of the state is well founded by the enactment of the law which requires that the female applicant must be a resident of the county in which the license is issued. The strict enforcement of said law will not only place our marriage regulations upon a higher plane, but at the same time, it will prevent the marriage license laws of sister states from being evaded. One of the great evils in this country today is the loose marriage and divorce laws. Adjoining states, during the past few years, have enacted strict laws concerning the issuance of marriage licenses and because of this fact in order to evade the laws thousands have come to Indiana and secured marriage licenses, and by so doing, have not only evaded the laws of their respective states, but have been parties to the violation of the law of our own state. The State of Indiana should not assist parties from other states to evade the laws of their respective states. This is precisely what is done when marriage licenses are issued to parties from other states when they come within our jurisdiction to evade the marriage laws of their respective states. Courts of justice in one state should out of comity help to enforce the laws of another state when by such enforcement they will not violate their own laws or inflict an injury on some one of their own citizens. 11 C. J. 1236.

The appellant contends that even though the statute be construed as commanding the clerk to issue licenses to none but residents of the county, the statute does not apply to non-residents of the State of Indiana and cites the cases of *Bates* v. *Stokes* (1866), 40 Miss. 56; *Bollin* v. *Shiner* (1849), 12 Pa. St. Rep. 205; and *Reifschneider* v. *Reifschneider* (1909), 241 Ill. 92, 89 N. E. 255, to support his contention. We have carefully read these cases. We do not approve the case of *Bates* v. *Stokes* and do not consider the other cases applicable in the instant case.

The appellant further contends that §44-204 Burns 1933 (§5635 Baldwin's 1934), *supra,* which provides the penalty which plaintiff seeks to enforce is ██ unconstitutional for the reason it provides for and unlimited penalty. The penalty here provided is a forfeiture in the nature of a debt to be recovered by the state. Even in the case of a strict penalty there is no constitutional provision requiring that the legislature shall, in enacting penal statutes, fix the maximum penalty. This is generally done but when not done the power to impose a fine is limited by the Constitution as fixed in Article 1, §16, of the Indiana Constitution which says:

"Excessive fines shall not be imposed."

*In re Yell* (1895), 107 Mich. 228, 65 N. W. 97; *Frese* v. *State* (1887), 23 Fla. 276, 2 So. 1.

In the case of *Frese* v. *State, supra,* it was contended by the appellant that a statute relating to the liquor laws of the state, which provided:

". . . a fine of not less than double the amount required for such license . . .,"

was unconstitutional in that it did not fix a maximum fine. This case is a well reasoned one and many cases are cited to sustain the opinion of the court. In disposing of this question the court, among other things, said (p. 271):

"Though in this State it is customary for either the *maximum* or the *minimum* and *maximum* of fine or imprisonment with which an offense can be punished to be declared by statute, and the Judge is to fix the amount within such limit or limits, according as the particular circumstances of the offending person may justify, yet we have no constitutional provision expressly providing that such limit or limits of fine shall be declared by statute, nor any, the effect of which is to make an omission by the legislative department to fix or prescribe the *maximum* quantity of fine fatal to a statute imposing a fine as the punishment of a misdemeanor. It is perfectly clear that the statute in question does not of

itself violate our Bill of Rights by imposing an excessive fine for the commission of the offense of selling liquor without a license, unless it be that the *minimum* fine authorized by it be itself an excessive one for the offense denounced. . . . The mere failure to fix the *maximum* of a fine is not the imposition of an excessive fine. In the absence of a statutory declaration of a *maximum* the courts are regulated or restrained by the same provision of the Bill of Rights that the citizen relies upon for protection against the infliction by them of excessive fines within the *maximum*, where such a maximum has been prescribed by statute."

It is also insisted by the appellant that the provisions of Ch. 67 of the Revised Statutes of 1852, regulating the issuance of marriage licenses, including §44-201 Burns 1933 (§5622 Baldwin's 1934), *supra*, has been repealed by implication by the enactment of Ch. 126, Acts 1905 (§§44-205 to 44-212 Burns 1933, §§5625 to 5632 Baldwin's 1934.) We can not assent to this contention. There was no express repeal by the Act of 1905, and repeals by implication are not favored. Section 1 of the Act merely provides that no license shall be issued except upon a written and verified application, giving in detail the history of the life of the applicant. Section 3 provides that no license to marry shall be issued where either of the parties is an imbecile, epileptic, of unsound mind, or under guardianship as a person of unsound mind and other conditions of like nature. Section 6 provides for a penalty in making false statements in the application. Section 7 provides a penalty against one who solemnizes a marriage knowing that the parties have not complied with the statute, and section 8 provides a penalty against the clerk of the circuit court who issues any license contrary to the provisions of the Act. We are clearly of the opinion that the provisions of Ch. 67 of the Revised Statutes of 1852 were not repealed by

the Act of 1905 and that there was no intention on the part of the legislature to do so. As we construe the Act of 1905 it merely adds to and strengthens the marriage regulations then in force. Any other construction emasculates many of the sound provisions of the marriage regulation act which have been in force for years. If the legislature intended to do this it would have certainly said so in express words. This it did not do and it can not be said it did so by implication.

This appeal is from an interlocutory order granting a temporary injunction. Ordinarily the final merits will not be considered in such appeal. In this case, however, the briefs and arguments of attorneys for the respective parties to the appeal were upon the merits of the case and for this reason we have discussed in the opinion what may be said to be the final merits of the case and are of the opinion that the judgment of the lower court should be affirmed.

Judgment affirmed.