**GETTY REFINING AND MARKETING COMPANY, Plaintiff,**

v.

**PARK OIL, INC., (a/k/a Park Oil Company, Inc.), Frank Jock, Shirley Jock, Michael Jock and Donna Smith, Defendants.**

Court of Chancery of Delaware,
New Castle County.

Submitted Feb. 1, 1978.
Decided March 13, 1978.

Stephen E. Herrmann, of Richards, Layton & Finger, Wilmington, for plaintiff.

Stephen B. Potter, of Potter & Carmine, Wilmington, for defendants.

HARTNETT, Vice Chancellor.

Plaintiff-"Getty" filed a Complaint alleging six Counts. Count I was an allegation that defendant-Park Oil, Inc. ("Park Oil") owed Getty $535,228. for oil sold to it by Getty. Count II alleged that defendants Frank and Shirley Jock guaranteed a portion of the debt and were liable to Getty for part of the amount claimed to be owed.

These two Counts standing alone are claims for debt or money and ordinarily would be brought in the Superior Court. If these two Counts were the only allegations in the Complaint, this Court would not have subject matter jurisdiction to hear the Complaint. 10 *Del.C.* § 342.[1]

The other Counts in the Complaint, however, allege causes of action which, it is urged by Getty, are traditionally brought in this Court. Counts III, IV and V allege that certain real estate owned by Frank and Shirley Jock was fraudulently transferred, or that the various defendants conspired to transfer certain assets without consideration, in violation of 6 *Del.C.,* Ch. 13, the Uniform Fraudulent Conveyances Act.

Count VI alleges that the corporate veil of Park Oil should be pierced because of alleged fraudulent acts of Frank Jock so that the obligations of Park Oil be held to be the obligations of Frank Jock.

Various defendants filed Motions To Dismiss the Complaint on the grounds that this Court does not have subject matter jurisdiction. Various other motions are also pending but this Opinion discusses only the Motions To Dismiss.

### I

As a creditor whose claim has not matured into judgment, Getty argues that the Court of Chancery has subject matter jurisdiction because of 6 *Del.C.* § 1310, part of

---

1. 10 *Del.C.* § 342 states:

   The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State.

the Uniform Fraudulent Conveyances Act.[2] Jurisdiction of this Court in matters involving fraudulent conveyances was directly upheld in *E. M. Fleischmann Lumber v. Resources Corporation International,* Del.Ch., 98 A.2d 506 (1953). Although the claim in that action had matured into a civil judgment, on defendant's Motion To Dismiss the Complaint for failure to state a claim upon which relief can be granted, the Court held:

> As I read defendants' brief they contend that plaintiff must first exhaust its remedies at law before coming into a court of equity. The short answer would seem to be that both traditional equity jurisdiction and 6 Del.C. § 1310 authorize an action of this type. Moreover, this court is certainly a proper court to administer the remedies necessary to provide an adequate remedy where the claim has *not* matured. (emphasis added)

■ It is therefore settled in this State that this Court does have at least concurrent jurisdiction to hear controversies involving alleged violations of the Uniform Fraudulent Conveyances Act, whether the claim has matured or not.

## II

■ It is also clear that this Court has jurisdiction to hear actions where facts are alleged which, if true, would permit the Court to pierce the corporate veil and hold individual stockholders personally liable for debts of a Delaware corporation. *Sonne v. Sacks,* 314 A.2d 194 (Del.Supr.1973).

This Court, therefore, does have subject matter jurisdiction to hear the allegations of Counts III, IV, V and VI of the Complaint.

## III

The question now to be decided is whether the Court of Chancery, since at least part

of the controversy is within its jurisdiction, should take jurisdiction over the entire controversy even though the other part of the controversy is such that it ordinarily would be brought in the law courts.

■ It seems clear that if a controversy is vested with "equitable features" which would support Chancery jurisdiction of at least a part of the controversy, then the Chancellor *has discretion* to resolve the remaining portions of the controversy as well. This position finds direct support in 1 Pomeroy's *Equity Jurisprudence* § 181:

> [I]f the controversy contains any equitable feature . . . by means of which a court of equity would acquire, as it were, a partial cognizance of it, the court *may* go on to a complete adjudication, and may thus establish purely legal rights and grant legal remedies which would otherwise be beyond the scope of its authority . . .

> It should be carefully noticed, however, that the proposition is not stated in absolute terms, as though the rule were peremptory; it is rather *permissive* . . . (emphasis added)

This proposition was cited with approval in *Carpenter v. Osborn,* 102 N.Y. 552, 7 N.E. 823 (1886), an action brought for the purpose of setting aside certain transfers of real property as being fraudulent and void as against creditors.

The type of jurisdiction existing in the present case is often termed "concurrent jurisdiction" and Pomeroy also indicates that whether a Chancery Court will continue to exercise concurrent jurisdiction over an entire controversy where part of it is cognizable at law and part of it is equitable is discretionary with the Court. Pomeroy § 175.

> (1) Restrain the defendant from disposing of his property;
> (2) Appoint a receiver to take charge of the property;
> (3) Set aside the conveyance or annul the obligation; or
> (4) Make any order which the circumstances of the case may require.

---

2. *6 Del.C.* § 1310 states:

§ 1310 *Rights of creditors whose claims have not matured.*

Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person whom he could have proceeded had his claim matured, and the court may:

The proposition that "once equity obtains jurisdiction, it may go on to decide the whole controversy" in appropriate cases is also supported by Delaware case law. In *Wilmont Homes v. Weiler,* Del.Supr., 202 A.2d 576 (1964), an action to abate a nuisance was filed against a builder because of the continued flowing and collecting of large amounts of surface water upon plaintiffs' land. It was charged that defendant's negligent grading of adjacent land was responsible for the nuisance. The Court held:

> Fundamentally, once a right to relief in Chancery has been determined to exist, the powers of the Court are broad and the means flexible to shape and adjust the precise relief to be granted . . .

In response to the defendants' argument that the judgment was in effect a money judgment which demonstrated the existence of an adequate legal remedy, the Court held:

> [H]owever, this suit falls within a field of original equity jurisdiction, the abatement of a nuisance. This being the case, it is settled law that when equity obtains jurisdiction over some portion of the controversy it will decide the whole controversy and give complete and final relief, even though that involves the grant of a purely law remedy such as a money judgment.

Another Delaware case, *New Castle County Volunteer Firemen's Assn. v. Belvedere Volunteer Fire Co.,* Del.Supr., 202 A.2d 800 (1964), involved an action for injunctive relief which was properly initiated in Chancery, but subsequently became mostly moot, leaving one issue which could have initially been the basis of a purely legal action. The Court justified its retention of jurisdiction as follows:

> [W]hen once jurisdiction is *properly* obtained by Chancery, it will go on to decide the whole controversy, even though to do so involves the giving of a purely legal remedy. (emphasis added)

■ I, therefore, hold that this Court does have concurrent subject matter jurisdiction over the entire controversy at this time. See *Wolf v. Globe Liquor Co.,* Del. Ch., 62 A.2d 856 (1948).

IV

■ There is nothing in the *Wilmont* and *Belvedere* cases, however, which suggest that this Court cannot refuse to hear and determine that portion of a controversy which standing alone would not fall within Chancery's jurisdiction. In such a case the Court has discretion to continue to hear the essentially legal portion of the action or to transfer it to the appropriate law court. Pomeroy § 175.

■ This Court has also clearly indicated that, once it has jurisdiction over a matter, it is discretionary whether it will determine a factual issue without a jury if the issue is one which would ordinarily be tried by jury at law. *Mackenzie Oil Co. v. Omar Oil & Gas Co.,* Del.Ch., 120 A. 852 (1923).

■ Some of the reasons why equity, once having acquired jurisdiction over part of a controversy, will, in the Court's discretion, continue to exercise jurisdiction over the entire controversy, even over those portions where there is an adequate remedy at law are: to resolve a factual issue which must be determined in the proceedings;[3] to avoid multiplicity of suits; to promote judicial efficiency; to do full justice; to avoid great expense; to afford complete relief in one action; and to overcome insufficient modes of procedure at law. See Pomeroy § 175.

Of great importance is whether the facts involved in the equitable counts and in the legal counts are so intertwined as to make it undesirable or impossible to sever them. See *Young v. Vail,* 29 N.M. 324, 222 P. 912 at 929.

In this action Counts I and II of the Complaint stand alone and are not dependent on the other counts. The narrow issue presented in Count I is: Does Park Oil owe Getty a sum of money and if so, how much? The narrow issue presented in Count II is whether Mr. and Mrs. Jock guaranteed the

---

**3.** See *Mackenzie Oil Co. v. Omar Oil & Gas Co.,* supra.

debt set forth in Count I and are liable for it. Obviously these issues which are basic to the entire controversy can be tried in the Superior Court without reference to the other counts and the Superior Court could grant adequate relief by entering judgment.

Likewise, the other counts are not dependent on Counts I and II for resolution. While the amount of the debt ultimately must be determined for final relief, the determination of the amount of the debt can be made just as well at law as in this Court.[4] The factual issues necessary for a resolution of all the counts except Counts I and II can be determined separately by trial in this Court, although perhaps somewhat less efficiently than if all the counts were tried together.

## V

A strong argument could be made in favor of a severance and separate trial at law for Counts I and II of the Complaint in as much as defendants would be entitled to a jury trial as to these counts if this action has been brought in Superior Court.

■ Counts I and II allege an action of debt for goods sold and delivered. The common law granted a civil jury trial for an action of this nature. *Asamen v. Thompson,* 55 Cal.App.2d 661, 131 P.2d 841 (1942). This right has been preserved by Article I, § 4 of the Delaware Constitution.[5] *In re Markel,* Del.Supr., 254 A.2d 236 (1969); *State v. Fossett,* Del.Super., 134 A.2d 272 (1957).

## VI

The real issue here, therefore, is not whether a portion of this action should be dismissed for lack of subject matter jurisdiction in this Court but rather should this Court, in its discretion, sever Counts I and II of the Complaint and direct a transfer of those Counts to the Superior Court for trial so that defendants, or some of them, may have a jury trial on those issues, if they desire.

*Saunders v. Saunders,* Del.Super., 71 A.2d 158 (1950) discussed in depth the question of the discretion of a Chancery judge to frame a jury issue. Our Supreme Court held that if this Court has subject matter jurisdiction over a controversy, it has broad discretion whether to frame an issue of fact for trial before a jury. See also *Aetna Cas. & Sur. Co. v. Mayor & Council,* Del.Ch., 160 A. 749 (1932).

■ The fact that the plaintiff joins legal and equitable claims in a Complaint should not automatically deprive a defendant of the right to a trial by jury on the purely legal issues. Pomeroy § 358(a) citing *Sweigart v. State,* 213 Ind. 157, 12 N.E.2d 134, 114 A.L.R. 1117.

This is so because otherwise a plaintiff could deprive a defendant of a jury trial merely by adding a spurious equitable claim to a demand for money damages and commencing the action in Chancery instead of at law.

■ Nor does the fact that an issue can be framed by the Court of Chancery for trial by jury completely provide a complete remedy. A jury trial in Chancery is advisory only. *Scotton v. Wright,* Del.Ch., 122 A. 541 (1923). An advisory jury verdict which may be disregarded by the Chancery judge is not entirely equivalent to a jury verdict at law.

The old procedure of framing of issues by the Court of Chancery for jury trial is now probably outmoded[6] and this Court is certainly not equipped to hold jury trials itself even if permissible. A far better solution would seem to be to sever that portion of a case which can be easily severed and provide for its transfer to the Superior Court

---

4. Apparently it is not disputed that some sum is owed to Getty by Park Oil.

5. Article I § 4 states *inter alia*:
   Section 4. Trial by jury shall be as heretofore.
   · · ·

6. 10 *Del.C.* § 369 states:
   When matters of fact, proper to be tried by a jury, arise in any cause depending in Chancery, the Court of Chancery may order such facts to trial by issues at the Bar of the Superior Court.

for trial by jury in appropriate instances. It is certainly in the best interests of substantial justice that the Superior Court be given jurisdiction over an issue to be tried before a jury as early in the case as feasible so that preliminary issues relating to the jury trial may be decided by the Court which will try the case.

The unusual factual context in the case at bar shows that the basic issue is whether defendants are indebted to plaintiffs for goods sold and delivered, a cause of action exclusively at law. The other issues which are equitable are subservient to that basic issue. See *Rowell v. Kaplan,* 103 A.2d 60, 235 A.2d 91 (1967). In addition, as discussed previously, Counts I and II can easily be severed and tried separate from the other counts.

For these reasons, a request at the appropriate time for a jury trial of Counts I and II of the Complaint may not be unreasonable in this action. I base this observation however on the present limited Record before the Court and the present status of this case.

### VII

A decision on the question of whether Counts I and II of the Complaint should be tried by a jury is premature at this time, however, since none of the defendants have yet requested a jury trial. The defendants who have filed answers did not request a jury trial as to any issues and

---

**7.** The oral representations of counsel indicate that the answer was for all defendants except Frank Jock. There is also a question of wheth-

Frank Jock has apparently not yet filed an answer. The answer itself is somewhat unclear as to which defendants were to be covered by it.[7]

There is also pending in this litigation numerous motions and applications for judgments. Until there is a determination of these motions and applications and until a defendant requests a jury trial, it would be improper for me to rule on whether Counts I and II of the Complaint should be severed and transferred to the Superior Court for jury trial. In the absence of a request for a jury trial there would certainly be no valid reason for this Court not to continue to exercise its discretion and keep jurisdiction over the entire controversy.

Defendant's Motion To Dismiss for Lack of Subject Matter Jurisdiction is therefore denied.

All defendants who have not filed answers pending a resolution of the Motion To Dismiss are directed to file answers within ten days of this date. Any request for a jury trial shall be made within the same time limit.

So ordered.

---

er the defendants who have filed answers have waived a right to request a jury trial.