In re the MARRIAGE OF Jay Coy TAYLOR, Appellant (Respondent Below),

and

Juanita Marilyn Taylor, Appellee (Petitioner Below).

No. 2-780A224.

Court of Appeals of Indiana, Second District.

Aug. 31, 1981.

Rehearing Denied Oct. 21, 1981.

Charles D. Hankey, Indianapolis, for appellant.

Belle T. Choate, Indianapolis, for appellee.

SHIELDS, Judge.

Jay Coy Taylor (Jay) appeals the property distribution in a dissolution decree dissolving his marriage with Juanita Marilyn Taylor (Juanita). Jay raises a number of issues for review; however, because we reverse, we shall address only the following issue:

> Did the trial court abuse its discretion in valuing the marital property at the time of separation?

Taylors separated October 1, 1974, at which time they divided their personal assets and belongings. Subsequently, Juanita and Jay became financially independent. Juanita remained in the house owned as tenants by the entireties, maintained the house, paid the mortgage payments, and raised and supported their son. Jay left the marital residence, paid off certain preseparation joint debts, and made some cash payments to Juanita. On June 5, 1979 Juanita filed a petition for dissolution of marriage.

The decree of dissolution awarded the marital residence to Juanita but provided that Juanita should pay $2,000 to Jay as his share of equity in the marital residence. The special findings of fact reveal the trial court calculated the equity in the marital residence using October 1974 values as follows:

| | |
|---|---|
| Value of house | $34,450 |
| Less: mortgage | 26,500 |
| Equity: | $ 7,950 |

As of the date of the final hearing, the house was valued at $56,000 and the mortgage balance was reduced.

Both parties agree that distribution of marital property is a matter within the sound discretion of the trial court. *Geberin v. Geberin*, (1977) 172 Ind.App. 255, 360 N.E.2d 41. However, Jay argues the trial court abused its discretion in using the 1974 value of the house as a basis for his $2,000 equity award. We agree and hold in using the value of the entireties-owned real estate on the date of separation, October 1974, the trial court erred as a matter of law and hence abused its discretion.

The dissolution of marriage act and case law is silent as to the date of valuation of the marital property. IC 31–1–11.5–11(a) (Burns Code Ed., Supp.1979) speaks only to the property subject to division and therefore valuation, but not to the date of valuation. Therefore we must determine: 1) whether a date certain for valuation is required, and 2) if such a date is required what that date should be.

In a marriage of any duration the possible equitable valuation dates are limitless. Hence, the necessity for a date certain is obvious. Meaningful settlement discussions would be virtually impossible; trials would be lengthened; fees for experts would skyrocket as they assimilate the necessary data to have an opinion on the fair market value of the numerous items of marital property on any number of dates, including, for example, the date of first separation, the date of final separation, the date of filing the petition, the date of filing the cross-petition, and the date of trial. Therefore, the statutory mandate of a just and reasonable division requires the division of marital property be based on values determined as of a date certain.

The dissent would leave the date of valuation to the "equities of the case." We certainly agree valuation of the property is an indispensable part and necessary component of the power to divide. However, we fail to understand the basis for the opinion that the statutory requirement of a just and reasonable division necessarily leads to the conclusion that the trial court may choose the date of valuation based on the evidence that best suits the equities of the case. The factors which the dissent would have the trial court weigh in determining what date of valuation best suits the equities of the case are factors which the trial court should indeed consider. However, the factors are properly considered under the mandate of IC 31–1–11.5–11(a) (Burns Code Ed., Supp.1979) in determining what is a just and reasonable division of the property.

The next step is to determine the date certain. Unquestionably, the selection of the date is a legislative prerogative which unfortunately has not been explicitly exercised. The court, then, must fill the void until the legislature speaks.

■ Several dates might be selected, but one is the most reasonable—the date the dissolution action is commenced. By the terms of IC 31–1–11.5–11(a) (Burns Code Ed., Supp.1979), the parties may acquire separate properties after the date of final separation. While there may have been some ambiguity as to what the date of final separation is, any such uncertainty has been put to rest by legislative clarification. The 1980 General Assembly amended IC 31–1–11.5–11 to specifically define the date of final separation as the date the petition is filed. IC 31–1–11.5–11(a) (Burns Code Ed., Repl.1980) Thus, the date has significance in determining the property within the marital pot. If that date puts a lid on the pot, it is logical to simultaneously determine the value of its contents. If the value of items in the marital pot increases or decreases after the date of final separation due to the conduct of the parties, the trial court may, of course, take this into account under IC 31–1–11.5–11. Valuation of marital property on the date of final separation will also assist the parties in marshalling the evidence and appraisals of property in preparation for the final hearing date.

■ Were this court entitled to weigh the evidence, we might hold that the trial court did not abuse its discretion in the instant case in dividing the marital property. However, we do not have that alternative. Because the trial court exercised its discretion under a misconception of the law, it is pure conjecture that the trial court would exercise its discretion in the same manner using the proper valuation date. Only the trial court can make that determination and it must be given the opportunity to do so.

Reversed and remanded.

SULLIVAN, J., concurs.

BUCHANAN, C. J., dissents, with opinion.

BUCHANAN, Chief Judge, dissenting.

## I.

I agree with the majority that "we must determine . . . . whether a date certain for valuation is *required*." Slip opinion at 650 (emphasis added). Like the majority, I believe that setting such a date at the time of the filing of the petition for dissolution would be the soundest possible policy. Like the majority, I have been unable to find any authority, binding or persuasive, to suggest that the law *requires* any such rule. Unlike the majority, I would confine our efforts to construing the statutes as enacted by the legislature.

The courts of this State do have the inherent power, as common law courts, to regulate the proof and trial of actions at common law. But courts of common law have never been empowered to grant divorces. That power rested in medieval times with the ecclesiastical courts, which relied on civil codes, not the common law. See 24 Am.Jur.2d *Divorce and Separation* § 6, p. 180.

In this country, the task of regulating divorce was taken over not by the courts, but by the legislatures. "The regulation of marriage and divorce has been fully recognized as a matter within the exclusive province of the Legislatures of the States." *Sweigart v. State*, (1938) 213 Ind. 157, 165, 12 N.E.2d 134, 138. "The right to divorce is not a common law right, but depends upon legislative enactments. 27 C.J.S., Divorce, § 69, p. 629; 17 Am.Jur. 274, § 242; *Hetherington v. Hetherington*, (1928) 200 Ind. 56, 160 N.E. 345." *State ex rel. Quear v. Madison Circuit Court*, (1951) 229 Ind. 503, 507, 99 N.E.2d 254, 256. "The right to apply for or obtain a divorce is not a natural one, but is accorded only by reason of statute, and the state has the right to determine who are entitled to use its courts for that purpose and upon what conditions they may do so." *Berghean v. Berghean*, (1943) 113 Ind. App. 412, 416, 48 N.E.2d 1001, 1003.

In short, the prescription of regulations for the issues to be proven in dissolution proceedings is a function of the legislature. This court lacks jurisdiction to exercise that function. Ind.Const. Art. 3 § 1.

The Indiana Legislature has chosen to leave matters which have not been resolved

by the Dissolution Act to the discretion of trial courts. *Johnson v. Johnson*, (1976) 168 Ind.App. 653, 344 N.E.2d 875. Our legislature has commanded that trial courts make a fair and equitable division of the marital estate:

> In an action pursuant to section 3(a)[31–1–11.5–3(a)] of this chapter, the court *shall divide the property* of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, *in a just and reasonable manner*, either by division of the property in kind, or by setting the same or parts thereof over to one [1] of the spouses and requiring either to pay such sum, either in gross or in installments, *as may be just and proper*, or by ordering the sale of the same under such conditions as the court may prescribe and dividing the proceeds for such sale.

I.C. 31–1–11.5–11(b) (Burns 1980 Repl.)

"First and most elemental in any fair, equitable distribution of property is a knowledge of the totality of the property in which the parties to the divorce hold an interest." *Hardiman v. Hardiman*, (1972) 152 Ind.App. 675, 682, 284 N.E.2d 820, 824. In order to divide the marital estate properly, the trial court must apprise itself of the value of the marital property. *Id.* This general principle is most apposite when the trial court divides the property "by setting the same . . . over to one (1) of the spouses and requiring either to pay such sum . . . as may be just or proper. . . ." I.C. 31–1–11.-5–11(b).

The repeated call for *just, proper*, and *reasonable* property divisions and the requirement that the trial court's decision in dividing property be an *informed* one convince me that in evaluating marital property, the trial court may choose any method of evaluation based on the evidence before it that best suits the equities of the case. Evaluation therefore becomes an indispensable part of division. The power to evaluate can reasonably be inferred from the power to divide; indeed it is a necessary component.

In the case at bar, the court was unquestionably within its rights to note that for more than five years, Jay Taylor lived away from the Taylor house, and that Juanita had lived in the house, raised her son in it, maintained it, and paid for it. During the separation, under the sole stewardship of Juanita, the house greatly appreciated in value. It was neither unjust nor inequitable for the court to conclude as to that appreciation that since Jay suffered no pains, he should take no gains.

Had the trial court arrived at that conclusion with the equity in the Taylor house, evaluated both in 1974 and in 1980, before it, I take it that the majority would find no basis for reversal. But once it is granted that the trial court may award the appreciation after 1974 to Juanita, I see no reason to demand that the trial court make the idle gesture of finding the exact value of that appreciation.

Consequently I see no abuse of discretion in the trial court's division of all the marital property, taking certain factors into consideration, including the spouse's contributions to acquiring and maintaining the property, their economic circumstances, and their conduct with respect to the property. Jay has not shown us that the trial court did not *consider* these matters; he objects only to the result of that consideration.

## II.

Jay has presented four additional issues, which do not present any reversible error. Because I would affirm, and cannot concur in result, I briefly discuss these issues.

ISSUE TWO—Did the trial court abuse its discretion by making a retroactive award of child support when it set Jay's payment of the Taylors' pre-separation debts off against Jay's obligation to support his son?

PARTIES CONTENTIONS—During the separation, Jay had paid some $16,000 toward retiring the Taylors' marital debts other than their mortgage. As to these payments, the trial court found:

> That Respondent has made certain contributions in the form of payments direct-

ly to Petitioner and in the form of payment of joint obligations, and said monies are to be considered in satisfaction of his obligation to support the minor son from October 1, 1974 to the present date.

Jay calls this finding an order for retroactive child support, which he avers is contrary to law. Further, if his payments were regarded as a discharge of his obligations as a father, and not as a contribution to the marital estate, then this would be a consideration not contemplated by our divorce law, which would tend to decrease his share in the property settlement. For both reasons, Jay urges reversal.

CONCLUSION—The trial court did not abuse its discretion.

Jay mistakenly interprets the above paragraph as a "child support award," I do not understand the trial court to have made an "award" at all. Instead, the court was addressing the problem of how to characterize the money Jay paid Juanita during their separation. It took notice of Jay's duty to support his son, and set the two off against each other.

Jay has not shown that he has been prejudiced by this finding. In order for an assignment of error to succeed on appeal, prejudice must be shown. Ind.Rules of Procedure, Trial Rule 61; *Trimble v. Trimble* (1976), 167 Ind.App. 600, 339 N.E.2d 614. The money that Jay paid to Juanita survives in the marital estate only in the form of the elimination of the marital debts. Thus, Jay has already benefited in the distribution of property from the money he paid: by reducing the marital debt, he reduced the possibility of being made responsible for that debt in the dissolution decree.

Therefore, any possible abuse of discretion was harmless.

### III.

ISSUE THREE—Did the trial court abuse its discretion in awarding Juanita $500 in attorney fees?

PARTIES' CONTENTIONS—The trial court's finding No. 25 says:

25. That Respondent [Jay] should pay to Petitioner's [Juanita's] attorney the sum of Five Hundred Dollars ($500.00) as reasonable attorney's fees.

The court then ordered:

N. That Respondent is to pay to Petitioner's attorney the sum of Five Hundred Dollars ($500.00) within sixty (60) days from the date of this Order.

Jay reminds us that he is unemployed, and that the debts he had run up during the separation, taken together with the property settlement, leave him insolvent; whereas Juanita has a steady job, and has prospered by comparison. He argues that as Juanita has resources from which she could pay her attorney fees, and he has almost none, it was an abuse of discretion for the trial court to order him to pay $500 to Juanita's attorney. The record shows that Jay did pay the $500 to Juanita's attorney.

CONCLUSION—There was no abuse of discretion in charging attorney fees against Jay.

"[T]hat a wife has assets from which payment could be made does not, *standing alone*, make an award for her benefit improper." *Wendorf v. Wendorf* (1977), Ind. App., 366 N.E.2d 703, 706. Nor does it show an abuse of discretion that the spouse required to pay attorney fees received a smaller share in the division of property. *In Re Marriage of Lewis* (1977), 172 Ind. App. 463, 360 N.E.2d 855.

Further, one of the factors a trial court may consider in allocating attorney fees is the responsibility one of the parties may bear for the other's incurring such fees. *See Ross v. Ross* (1979), Ind.App., 397 N.E.2d 1066; *Haycraft v. Haycraft* (1978), Ind.App., 375 N.E.2d 252. It appears from the record that during the pendency of the petition for dissolution, Jay entered the marital house in violation of an agreement that he not see Juanita while the petition was pending, and on that occasion battered her to the point of needing medical care. This incident occasioned two petitions for

citations of contempt against Jay, and Jay was in fact held in contempt. Such behavior undoubtedly aggravated Juanita's expense in pursuing her petition for dissolution, and it was not an abuse of discretion for the trial court to order that Jay bear that expense.

### IV.

ISSUE FOUR—Did the trial court abuse its discretion in declining Jay's request that the marital residence be sold, and the proceeds divided between the Taylors?

PARTIES' CONTENTIONS—Jay reiterates his straitened financial circumstances after the dissolution, and urges error in the trial court's refusing to order the marital residence sold and the proceeds divided between him and Juanita.

CONCLUSION—There was no abuse of discretion here.

Trial courts are not required to divide marital property evenly between the parties. *In Re Marriage of Hirsch* (1979), Ind. App., 385 N.E.2d 193. In this case, the Taylors' respective financial conditions are almost entirely the result of their separate dealings and fortunes during the time of their separation. For five years they relied upon their individual luck and skill in managing their finances. Jay had but little to do with Juanita's solvency, and Juanita had but little to do with Jay's insolvency. Juanita had no say in the dealings Jay had during their separation, nor in the risks he took; it was not an abuse of discretion for the trial court to decide that she should not bear the costs of those dealings.

### V.

ISSUE FIVE—In light of Jay's written request that findings of fact and conclusions of law be made, was the trial court's failure to make specific findings and conclusions as to the sale of the Taylors' house contrary to law?

PARTIES' CONTENTIONS—Finally, Jay says that because he requested general findings of fact and conclusions of law under T.R. 52(A), and urged the court to order that the marital residence be sold as part of the property settlement, it was error for the trial court not to make specific findings of fact addressed to the question of selling the house.

CONCLUSION—The trial court issued sufficient findings and conclusions; T.R. 52 was satisfied.

Jay reads T.R. 52 too restrictively. It is true that the trial court made no explicit finding on the question of selling the house. But the court did make extensive findings which, as discussed earlier, lead to the conclusion that Juanita was entitled to keep the house as her own. The trial court having shown that it was within its discretion to order that Juanita keep the house, it is hardly necessary for it to make the useless gesture of saying that not only should Juanita keep the house, but that she should also not have to sell it.

The decision of the trial court ought to be affirmed.