# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| ELAVON, INC.,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>ELECTRONIC TRANSACTION SYSTEMS CORPORATION, EDWARD VAUGHAN, and HADI AKKAD,<br><br>　　　　　　　Defendants. | C.A. No. 2021-0440-SG |

## MEMORANDUM OPINION

Date Submitted: January 31, 2022
Date Decided: March 7, 2022

Rolin P. Bissell, James M. Yoch, Jr., and Peter J. Artese, of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; OF COUNSEL: Michael C. Holmes and Jared D. Wilkinson, of VINSON & ELKINS LLP, Dallas, Texas; Michael S. Dry, of VINSON & ELKINS LLP, Washington, D.C., *Attorneys for Plaintiff Elavon, Inc.*

Michael C. Dalton and Bartholomew J. Dalton, of DALTON & ASSOCIATES, P.A., Wilmington, Delaware; OF COUNSEL: Ryan Scarborough, Graham W. Safty, and Trisha Jhunjhnuwala, of WILLIAMS & CONNOLLY LLP, Washington, D.C., *Attorneys for Defendants Electronic Transaction Systems Corporation and Edward Vaughan.*

Adam L. Balick and Melony R. Anderson, of BALICK & BALICK, LLC, Wilmington, Delaware, *Attorneys for Defendant Hadi Akkad.*

**GLASSCOCK, Vice Chancellor**

In this Memorandum Opinion I consider whether jurisdiction exists to hear this matter in the Court of Chancery. In our divided system in Delaware, the Superior Court is the court of general legal jurisdiction. Chancery, by contrast, is a court of limited jurisdiction. Its jurisdiction is that of the English Court of Chancery as of 1776. Other than a grant of statutory jurisdiction by the Legislature—not applicable here[1]—Chancery's jurisdiction is limited to those cases where adequate relief at law is unobtainable. Such cases come in two flavors. The first is equitable causes of action; that is, causes of action that depend on equitable and fiduciary relationships. The instant matter is not of that kind. The other flavor of equitable jurisdiction exists in those cases where the cause of action itself is legal, but where equity is required to act in order to provide complete relief. According to the Plaintiff, this matter is of that particular savor. I decline to find that the Court of Chancery has subject matter jurisdiction over this matter.

My reasoning follows.

---

[1] The General Assembly, in Section 111 of the DGCL, has extended jurisdiction to Chancery over certain asset sales requiring approval by stockholders. *See* 8 *Del. C.* § 111(a)(2)(iii). The complaint filed in this action originally cited to Section 111 as a basis for subject matter jurisdiction, but because the corporations at issue are not Delaware corporations, I noted at oral argument that Section 111 does not apply. *See* Verified Compl., ¶¶ 12, 8, 9, Dkt. No. 1 [hereinafter "Compl."]; Tr. of 11-22-2021 Oral Arg. Re Equitable Jurisdiction, 10:22–11:3, Dkt. No. 55 [hereinafter "Oral Arg."]. The parties have not made further argument with respect to Section 111 in their supplemental briefing.

# I. BACKGROUND

## A. Factual Background

The instant matter involves a contractual agreement, the Asset Purchase Agreement (the "APA") entered by the Plaintiff, Elavon, Inc. ("Elavon") and certain of the Defendants, Electronic Transaction Systems Corporation ("ETS") and Edward Vaughan.[2] In that transaction, Elavon purchased the assets of ETS, an electronic payment processing company.[3] The purchase price of around $180 million was subject to post-closing adjustments.[4] The APA contemplated use of an escrow account (the "Escrow Fund") holding $10 million to satisfy indemnification claims under the APA.[5]

According to Elavon, Defendant Vaughan, together with Defendant Akkad, defrauded Elavon via the APA.[6] Elavon seeks tort and contractual damages,[7] including rescissory, consequential, and expectation damages.[8]

## B. Procedural History

The complaint (the "Complaint") in this action was filed on May 18, 2021.[9] Defendant Akkad filed a motion to dismiss pursuant to Court of Chancery Rules

---

[2] Compl. ¶ 2; *see also id.* at Ex. A. Defendant Akkad is a former owner of ETS. *See* Compl. ¶ 11.
[3] *Id.* ¶ 2.
[4] *Id.*
[5] *Id.* ¶ 33.
[6] *Id.* ¶¶ 1, 3, 6.
[7] *See generally* Compl.
[8] *Id.* ¶ 212.
[9] *See generally* Compl.

12(b)(1) and 12(b)(2) on July 8, 2021.[10]  Defendants ETS and Vaughan filed their answer and counterclaims on that same day;[11] Plaintiff Elavon filed its reply on July 28.[12]  Briefing on Defendant Akkad's motion commenced in July 2021.[13]  I heard oral argument on November 22, 2021, but directed the parties at that time to discuss whether this Court had equitable jurisdiction over the matter, rather than hearing the full arguments pertaining to the motion to dismiss.[14]  Supplemental briefing followed.[15]  The Defendants now submit that "the Court should not exercise equitable jurisdiction" here.[16]

## II. ANALYSIS

Tort and contract, of course, are legal causes of action and the damages the Plaintiff seeks are available in the Superior Court.[17]  Elavon (and ETS via

---

[10] Def. Hadi Akkad's Mot. to Dismiss Pl. Elavon, Inc.'s Verified Compl. Pursuant to Court of Chancery Rules 12(b)(1) and 12(b)(2), Dkt. No. 16.  I note that Akkad's motion includes moving under Rule 12(b)(1), on the basis that Akkad is entitled to a trial by jury.  *See generally* Opening Br. of Def. Hadi Akkad Supp. His Mot. to Dismiss, Dkt. No. 30 [hereinafter "Akkad OB"].  I do not consider that argument here.

[11] Defs. Electronic Transaction Systems Corp. and Edward Vaughan's Answer, Affirmative Defenses, and Countercls. to Pl.'s Verified Compl., Dkt. No. 17.

[12] Pl. and Countercl. Def.'s Reply to Countercls. and Affirmative Defenses, Dkt. No. 29.

[13] Akkad OB.

[14] *See* Oral Arg.

[15] *See, e.g.*, Pl. Elavon, Inc.'s Suppl. Br. Regarding the Court's Subject Matter Jurisdiction, Dkt. No. 56 [hereinafter "Pl.'s Supp. Br."]; Defs. ETS and Vaughan's Suppl. Answering Br. Regarding Subject Matter Jurisdiction, Dkt. No. 59 ["hereinafter "Defs. Ans. Br."]; Def. Hadi Akkad's Joinder in Answering Submission Regarding Subject Matter Jurisdiction, Dkt. No. 60; Pl. Elavon, Inc.'s Suppl. Reply Br. Supp. Subject Matter Jurisdiction, Dkt. No. 64 [hereinafter "Pl.'s Reply Br."]

[16] Defs. Ans. Br. 15.

[17] *IBM Corp. v. Comdisco, Inc.*, 602 A.2d 74, 85 (Del. Ch. 1991) ("Damage remedies exist to compensate for loss engendered by torts or contract breaches which have already occurred.").

counterclaim) seek release of the funds in escrow, including "corresponding orders to the escrow agent to release the full amount of the Escrow Fund."[18] This latter—an order embodying the directive to the escrow agent—is the sole equitable harpoon by which the Plaintiff seeks to attach itself to Chancery's flank.

When examining its own jurisdiction, this Court must honor the first obligation of a limited-jurisdiction court: modesty. The Court must examine what the parties to the litigation are actually seeking, and go beyond the allegations of the pertinent complaint to ensure that Chancery jurisdiction is a necessity to adequate justice, and not, in then-Vice Chancellor Chandler's words, a "formulaic 'open sesame'" by which artful pleaders may achieve equity jurisdiction.[19] I have closely examined the pleadings here, together with the caselaw supporting jurisdiction on which the Plaintiff relies.[20] Here, an escrow agent is bound by contractual and fiduciary duties to these parties to release funds under certain contractual conditions. This release will follow either a joint directive of the parties, or a final unappealable order.[21] There is nothing in the record to suggest that such a directive by the parties in compliance with a Superior Court decision would not be forthcoming, or that a

---

[18] Pl.'s Supp. Br. 1.
[19] *IBM*, 602 A.2d at 78.
[20] *See generally E. Balt LLC v. E. Balt US, LLC*, 2015 WL 3473384 (Del. Ch. May 28, 2015).
[21] Pl.'s Supp. Br. 4.

declaratory judgment order by the Superior Court would be insufficient for the escrow agent to act.

Of course, as the Plaintiff points out, "only the Court of Chancery can issue an [injunction] directing the Escrow Agent to release the fund *if it fails to do so*."[22] That is the substance of the Plaintiff's jurisdictional argument; it *may* be that this Court's equitable powers will be invoked, and this contingent exercise of equity conveys jurisdiction. The remainder of the action—involving tort and contract causes of action far beyond what is in escrow—should (per the Plaintiff) be addressed by the Court under the "cleanup doctrine."[23]

But this is the reverse of the cleanup doctrine. Cleanup jurisdiction, generally, involves the Court addressing a legal cause of action after the equitable matter has been resolved, in the aid of judicial efficiency.[24] Here, by contrast, a resolution of the legal issues will necessarily determine the conditions for release of the escrow funds, in what amounts and to whom, as required by the contract. There is nothing in the pleadings that makes it likely that the escrow agent, post-decision in the Superior Court, would defy that Court's determination of contract rights and breach its duties to the parties by refusing a consistent directive by the parties to release the

---

[22] Pl.'s Reply Br. 3 (emphasis added).
[23] Pl.'s Supp. Br. 15.
[24] *See, e.g.*, *Getty Ref. & Mktg. Co. v. Park Oil, Inc.*, 385 A.2d 147, 149–50 (Del. Ch. 1978) (citations omitted) (discussing the clean-up doctrine as "permissive" and noting the proposition that "'once equity obtains jurisdiction, it may go on to decide the whole controversy'").

funds. In other words, a complete and efficient remedy is available at law. The fact that an unexpected subsequent breach by the escrow agent might give rise to a need for equity to act does not make this matter one that requires Chancery jurisdiction. This would not be the tail wagging the dog; it would be an unanticipated second dog biting that tail—the possibility of such a speculative cause of action does not, to my mind, open the kennel of equity.

The Plaintiff, nonetheless, points to three written cases[25] where the Court has followed a similar rationale. Those cases are *Xlete, Inc. v. Willey*,[26] *East Balt*[27] (following *Xlete*), and a Superior Court case following *East Balt*, *Haney v. Blackhawk Network Holdings, Inc.*[28] Like this case, both *Xlete* and *East Balt* pinned Chancery jurisdiction on a potential need for an order to release funds in escrow— in both cases, the request for relief was limited to a release of the escrow fund (and did not seek damages in excess of the existing fund).[29] The reasoning of the *East*

---

[25] The other matters relied on by the Plaintiff are either transcript rulings, or distinguishable. *See SecNet Holding, LLC v. Potash*, C.A. No. 7781-VCP (Del. Ch. Apr. 2, 2013) (TRANSCRIPT); *see also Athene Life & Annuity Co. v. Am. Gen. Life Ins. Co.*, 2019 WL 3451376 (Del. Ch. July 31, 2019) (finding equitable jurisdiction lacking); *United BioSource LLC v. Bracket Holding Corp.*, 2017 WL 2256618 (Del. Ch. May 23, 2017) (finding equitable jurisdiction over payment from a monetary fund where factual scenario at hand contemplated a merger, thus demonstrating a greater need for completeness and efficiency); *IBM*, 602 A.2d 74 (denying equitable jurisdiction); *CTF Dev., Inc. v. BML Props. Ltd.*, 2022 WL 42041 (Del. Ch. Jan. 5, 2022) (finding equitable jurisdiction over requests for specific performance and injunctive relief, and distinguishing *Athene* as dealing with a breach of contract action remediable by monetary damages).
[26] *Xlete, Inc. v. Willey*, 1977 WL 5188 (Del. Ch. June 6, 1977).
[27] *E. Balt*, 2015 WL 3473384.
[28] 2017 WL 543347 (Del. Super. Feb. 8, 2017).
[29] *E. Balt*, 2015 WL 3473384, at *2; *Xlete*, 1977 WL 5188, at *1.

6

*Balt* court was that legal relief there was insufficient, because it would not be adequately convenient to the plaintiff if it should prevail at law, but thereafter be required to come to Chancery to enjoin release of the funds.[30] Similarly, the *Xlete* court found that the plaintiff's legal remedy at law was not "as certain, prompt, complete, or efficient" as the equitable remedy sought.[31]

In addressing the sufficiency of legal jurisdiction, *East Balt* and *Xlete* necessarily assessed the particular relief sought, limited there to funds held by a third party. The facts in this case are somewhat different, particularly in that the damages sought exceed the value of the Escrow Fund.[32]

Here, examining the Complaint and its incorporated documents,[33] which seek broad legal relief, set forth the duty of the escrow agent to release the funds on a joint request or upon a final judicial order, and fail to plead facts indicating that injunctive relief will ultimately be required, it appears to me that adequate relief at

---

[30] *E. Balt*, 2015 WL 3473384, at *4 ("Because a damages award, or the potential enforcement of declaratory relief through a law court's contempt powers, would not be as 'certain, prompt, complete, or efficient' as the equitable remedies that Plaintiffs seek, this Court has subject matter jurisdiction over the Complaint.").

[31] *Xlete*, 1977 WL 5188, at *1.

[32] *See, e.g.*, Compl. ¶ 130 (identifying a September 2020 indemnification request in excess of $12 million).

[33] Exhibit A to the Complaint is the APA; the APA incorporates by reference its own schedules and exhibits; the Escrow Agreement is Exhibit D to the APA. The Escrow Agreement is thus an incorporated document with respect to the Complaint. *See* Compl.; *id.* at Ex. A, at 73; *id.* at Ex. A, at Ex. D.

law is available, divesting me of jurisdiction.[34]  A recent Court of Chancery case, *Alliance Compressors LLC v. Lennox Industries Inc.*, supports this result, finding that "[a]ny future breach following a court's ruling would be hypothetical, such that instructing [a party] to 'go, and breach no more' would be 'entirely unnecessary' and thus inappropriate."[35]  To the extent *East Balt* and *Xlete* indicate otherwise, I decline to follow their rationale here.[36]

A legal action cannot be transformed into an equitable one merely by suggesting that contingent relief, such as an escrow agent gone rogue, may necessitate an injunction.[37]  Because I lack jurisdiction here, the matter is dismissed subject to transfer to Superior Court pursuant to statute.

### III. CONCLUSION

This matter is dismissed for lack of subject matter jurisdiction, subject to transfer to Superior Court pursuant to 10 *Del. C.* § 1902.

---

[34] *E. Balt*, 2015 WL 3473384, at *3 (citing *IBM*, 602 A.2d at 78) ("The Court takes a realistic view of the complaint and will not hear a case where a complete legal remedy exists despite a plaintiff's prayers for traditional equitable relief.").

[35] 2020 WL 57897, at *5 (Del. Ch. Jan. 6, 2020) (citing *Athene*, 2019 WL 3451376, at *7).

[36] The other written decisions of this Court cited by the Plaintiff are distinguishable.  *See supra* note 25.

[37] Many contingencies, I assume, may involve invoking equity in way of a remedy.  If raising the possibility of such is sufficient to trigger Chancery jurisdiction, the distinction between law and equity would be eroded.  *See generally Athene*, 2019 WL 3451376.  *If* in fact an injunction is ultimately required here, there would be little burden, I note, on Elavon, after having succeeded at law, applying for such relief in this Court.